IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE MUTUAL FUNDS | * | |
| INVESTMENT LITIGATION | * | MDL-15863 |
| | * | |
| | * | |
| CRAIG WIGGINS, et al. | * | |
| | * | |
| v. | * | Civil No. JFM-04-818 |
| | * | |
| JANUS CAPITAL GROUP INC., et al. | * | |
| | * | |
| | * | |
| | ***** | |

OPINION

    This action is part of the MDL proceeding arising from late trading and market timing in the mutual funds industry.[1]  According to the allegations in the Second Amended Complaint ("SAC"), one of the defendants, Janus Capital Group Inc. ("JCG"), is "an asset management firm that launched mutual funds known as the 'Janus Funds.'"  (SAC ¶ 2.)  The other defendant, Janus Capital Management LLC ("JCM"), is a wholly-owned subsidiary of JCG that manages the Janus Funds and serves as the investor adviser to them.  (*Id*.)  Plaintiffs, purchasers of JCG stock, assert that the defendants stated publicly through prospectuses issued by the mutual funds that they prohibited market timing in their funds, while in fact they permitted certain hedge funds to engage in such trading.  The revelation of these secret arrangements in September 2003 exposed the defendants to regulatory penalties and allegedly prompted mutual fund investors to withdraw their investments, all of which caused a significant drop in the price of JCG's stock.

---

    [1] The reader's familiarity with the basic facts giving rise to this MDL is presumed.  For an explanation of late trading and market timing, see *In re Mutual Funds Investment Litigation*, 384 F. Supp. 2d 845, 852 n.1 (D. Md. 2005).

Against this background, plaintiffs have instituted this "parent investor class action," asserting that JCG and JCM violated section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  Plaintiffs also assert a control person claim against JCG under section 20(a) of the Exchange Act.  15 U.S.C. § 78t(a).  JCG and JCM move pursuant to Rule 12(b)(6) to dismiss plaintiffs' SAC.  For the reasons that follow, I will grant the motion.

<em><u>Section 10(b) Claim Against JCG</u></em>

"'To state a claim under section 10(b) and Rule 10b-5, a plaintiff must allege that . . . the defendant made a false statement or omission of material fact . . . .'"  *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 368 (D. Md. 2004) (quoting *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 342 (4th Cir. 2003)).  Moreover, the Private Securities Litigation Reform Act ("PSLRA") requires a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  The Fourth Circuit recently explained how the PSLRA affects the analysis of a motion to dismiss securities fraud claims.  *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162 (4th Cir. 2007).  The court said:

> [W]hile the Federal Rules generally allow a court, in ruling on a motion to dismiss under Rule 12(b)(6), to take into account *any set of facts that could be proved* consistent with the allegations of the complaint, even though such facts have not been alleged in the complaint, the PSLRA modifies this scheme (1) by requiring a plaintiff *to plead facts* to state a claim and (2) by authorizing the court to assume that the plaintiff has indeed stated *all* of the facts upon which he bases his allegation of a misrepresentation or omission.

*Id.* at 172 (emphasis in original).

Plaintiffs in the present action maintain that certain disclosures in the Janus Fund prospectuses misstated the policies regarding market timing and late trading that were being followed in the funds.[2]  (SAC ¶¶ 38-52.)  In particular, the prospectuses stated that the funds were "not intended for market timing or excessive trading" and that "Janus had measures in place to stop the trading," when in fact the defendants permitted several hedge funds to engage in market timing transactions.  (*Id.* ¶ 38.)  Plaintiffs claim that JCG assisted in the preparation and filing of these allegedly misleading prospectuses and therefore should be deemed to have made these statements.

The Supreme Court has held, however, that there is no aiding and abetting liability in private securities fraud actions.  *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).  After the *Central Bank* decision, the circuits developed various tests to distinguish between mere aiding and abetting and actionable primary violations of the securities laws.  *See Royal Ahold*, 351 F. Supp. 2d at 370-71.  In the Fourth Circuit, a misrepresentation must be "directly attributable to [the defendant] and not to some other person."  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 369 (4th Cir. 2004).[3]

---

[2] Plaintiffs initially contended that JCG's publicly filed financial results were also misleading.  According to plaintiffs, in exchange for the ability to engage in market timing, the hedge funds parked "sticky assets" in certain Janus funds, thereby distorting the assets under management.  (SAC ¶¶ 53, 85.)  Plaintiffs, however, devoted only a footnote to the financial statements argument in their memorandum in opposition to the motion to dismiss, and at the hearing before this Court their counsel confirmed that the focus of this case has always been the allegedly misleading mutual fund prospectuses.

[3] It is not entirely clear from *Gariety* itself whether the Fourth Circuit was adopting the "directly attributable to" test or was simply noting that the defendant was urging the court to apply this test.  Any ambiguity on this point, however, was resolved in the Fourth Circuit's

The SAC in the present action contains no allegations that JCG actually made or prepared the prospectuses, let alone that any statements contained therein were directly attributable to it. Plaintiffs concede as much, arguing that "[t]he fact that the prospectus statements were not specifically attributed to defendants does not warrant dismissal." (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss at 28.) According to plaintiffs, the fact that the mutual fund prospectuses bore Janus' logo, name, and website should alone render JCG liable for the allegedly misleading statements. This proposition, however, is far from self-evident, and plaintiffs cite no authority in support of it.

Plaintiffs further suggest that "[w]hether or not defendants drafted the misleading prospectuses, they clearly were actively involved in the dissemination of the misrepresentations with knowledge that the statements were false and misleading." (*Id*. at 31.) The SAC does contain a number of allegations regarding JCG's role in distributing the prospectuses. However, assuming that the authorities plaintiffs rely upon in making this argument are consistent with Fourth Circuit law, they do not support the contention that the dissemination of fund prospectuses alone was sufficient to expose JCG to liability. For example, *In re MTC Electronic Technologies Shareholder Litigation*, 993 F. Supp. 160, 161-62 (E.D.N.Y. 1997) held that an underwriter could be liable for preparing and disseminating a misleading prospectus, because of the "central role underwriters play in the issuance of securities and the special reliance placed on them by prospective investors." Importantly, the court limited its holding to underwriters and said that all other participants in securities offerings must literally make the allegedly false

---

subsequent unpublished decision in *Glaser v. Enzo Biochem, Inc.*, 126 F. App'x 593, 598-99 (4th Cir. 2005), where the court, citing *Gariety*, clearly expressed that the "directly attributable to" test was the law of the Circuit.

statements in order to be liable under Rule 10b-5.  *Id.* at 162; *see also In re Livent, Inc.*

*Noteholders Sec. Litig.*, 174 F. Supp. 2d 144, 154-55 (S.D.N.Y. 2001) (finding, without

discussing whether the dissemination of a document could impose liability, that an investment

bank had communicated a misleading statement through its solicitation and sales of the issuer's

securities).

    Other courts have simply rejected the proposition that dissemination of a misleading

document is tantamount to making a misstatement for securities fraud purposes.  *See SEC v.*

*Tambone*, 417 F. Supp. 2d 127 (D. Mass. 2006).  In *Tambone*, the SEC alleged that a broker-

dealer's executives permitted market timing and excessive trading in certain mutual funds while

fund prospectuses stated that such trading was prohibited.  *Id.* at 130.  Although the two

defendants clearly had not prepared, drafted, or signed the allegedly misleading prospectuses, the

SEC argued that their communication and dissemination of the offering documents subjected

them to liability.  *Id.* at 133.  The court rejected that argument, not only because the complaint

did not allege that the individual defendants themselves "controlled, supervised or played any

role in the distribution of the prospectuses," *id.* at 134, but also (and more fundamentally)

because "the SEC's claims of primary liability through dissemination does not [sic] withstand

the weight of contravening case law."  *Id.*; *see also Winkler v. NRD Mining, Ltd.*, 198 F.R.D.

355, 367 (E.D.N.Y. 2000) (refusing to hold a public relations firm liable for distributing another

company's misleading press release where the firm was "merely a conduit" for that other

company's statements).

    For these reasons, I find that plaintiffs have not alleged facts sufficient to support their

conclusory averment that JCG made a material misstatement or omission.  I note that this

holding is not inconsistent with my earlier ruling that the mutual fund shareholders themselves could state section 10(b) claims against JCG and JCM.  *See In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005).  In the mutual fund shareholders case, the plaintiffs asserted omissions and fraudulent *scheme* claims, *id.* at 853, and I denied JCG's and JCM's motion to dismiss not because I found they had themselves made material misstatements or omissions but because of their purported role in the alleged fraudulent scheme.  In the present case, although the alleged fraudulent scheme is mentioned as a background fact in the SAC, plaintiffs do not assert scheme liability on the part of defendants.  Nor could they do so.  The gravamen of the alleged scheme underlying all of this MDL litigation is that mutual fund shareholders were the intended victims of the fraudulent scheme, not the shareholders of the corporate parent of fund advisers.  It is for that reason that plaintiffs here have contended that JCG itself made material misstatements, and, as I have discussed, this contention is unsupported by the facts alleged in the SAC.

<u>*Claim Against JCM*</u>

A plaintiff in a section 10(b) action must demonstrate that the alleged fraud occurred in connection with the purchase or sale of a security.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).[4]  On February 27, 2006, I ruled in the Putnam Subtrack that Putnam Investment

---

[4] In light of my holding above that JCG did not make a material misstatement, I need not resolve an alternative argument offered by JCG that any misstatements contained in mutual fund prospectuses were not made "in connection with" the sale of JCG stock because they were directed to mutual fund shareholders.  I note, however, that in all likelihood I would not grant JCG's motion to dismiss on that ground.  *In re Carter-Wallace, Inc. Securities Litigation*, 150 F.3d 153 (2d Cir. 1998), clearly stands for the proposition that statements directed to persons other than shareholders of a defendant may be deemed to be "in connection with" the sale of the defendant's securities if they have a material impact upon the value of the defendant's securities. While I have some concern about the potential breadth of the *Carter-Wallace* doctrine, this case

Management, LLC, a mutual fund investment adviser, owed no duty to its parent's shareholders, because the latter never purchased or sold Putnam mutual funds. *Frederic Ian Fischbein PC v. Marsh & McLennan Cos.*, No. MDL-15863, Civ. JFM-04-1873, 2006 WL 734483, at *1 (D. Md. Feb. 27, 2006). As a result, I dismissed the shareholders' section 10(b) claim, which was based on allegedly misleading statements in Putnam mutual fund prospectuses and manipulative acts committed by Putnam. *Id.*

That ruling mandates the dismissal in the present action of plaintiffs' section 10(b) claim against JCM.[5] As in the Putnam Subtrack case, there is no nexus between plaintiffs, as JCG shareholders, and JCM, the funds' investment adviser. The authorities on which plaintiffs rely to distinguish the Putnam Subtrack opinion are inapposite. For instance, in *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000), the court found that shareholders in one corporation may have stated securities fraud claims against another company. Unlike the claims in the Putnam Subtrack and the instant action, however, the cause of action in *Semerenko* arose in the course of a tender offer, where the offeror's misrepresentations allegedly affected the price at which the plaintiffs purchased shares in the target corporation. *Id.* at 169-70. No such nexus exists in the present case.

———————————

– where the alleged misstatements were made in securities markets and allegedly had a significant impact upon the value of JCG stock – does not appear to be the appropriate vehicle for defining the limits of that doctrine, particularly absent the development of a factual record through discovery.

I also note that development of a factual record would be necessary before deciding another argument made by defendants that the alleged misstatements did not cause plaintiffs to suffer any loss. *See generally Dura Pharms.*, 544 U.S. at 341-46.

[5] Because I find that my ruling in *Fischbein* is dispositive of plaintiffs' claim against JCM, I need not decide whether JCM made the alleged misstatements upon which plaintiffs rely.

Another case relied upon by plaintiffs is *Muzinich & Co. v. Raytheon Co.*, No. CV-01-284-S-BLW (D. Idaho Apr. 30, 2002). It too is distinguishable from the present case. In *Muzinich*, Raytheon was held potentially liable to shareholders of Washington Group International ("WGI") for misrepresentations it allegedly made about the value of a subsidiary that it was selling to WGI. According to the court's description of plaintiffs' allegations, "Raytheon prepared financial reports that assigned revenue to [the subsidiary] from contracts that never closed, and projected profits on other projects that Raytheon knew were false." *Id.* at 2. Moreover, plaintiffs alleged that "Raytheon knew that these false financials would be included in WGI's Form 10-K filings with the Securities and Exchange Commission . . . and that investors would rely on the Form 10-Ks." *Id.* Thus, although Raytheon never entered into a direct relationship with the members of the plaintiff class as did the tender offeror/defendant in *Semerenko*, it did make misrepresentations that it allegedly knew would be specifically relied upon by purchasers of WGI stock and that allegedly had the direct effect of inflating the value of that stock. In other words, the correlation between the defendant's misrepresentations and the harm allegedly suffered by plaintiffs was far stronger and more direct than that involved here.

Plaintiffs also cite *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005). In that case JDS – which allegedly made misrepresentations concerning its financial health – was held to be potentially liable to purchasers of equity-linked debt securities issued by UBS, a Swiss bank, because the value of the debt securities was directly linked to the value of JDS stock. Here, although there is arguably a causal connection between the misrepresentations JCM is alleged to have made to investors in the Janus Funds and the value of JCG stock purchased by the plaintiffs, the connection is more tenuous than the direct ties between the securities' values

involved in *Zelman*.

Additionally, despite plaintiffs' assertions to the contrary, *In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC), 2004 WL 1435356 (S.D.N.Y. June 28, 2004) is unlike the present case. There, because research reports issued by Salomon Smith Barney ("SSB") allegedly contained material misstatements and omissions about WorldCom, SSB and its affiliated defendants were held to be potentially liable to plaintiffs who purchased equity-linked debt securities issued by SSB that were tied to the trading price of WorldCom common stock. Again, there was a direct connection between the value of WorldCom stock and the SSB debt securities.[6]

In short, I find that the circumstances of the cases relied upon by plaintiffs are unlike those presented here, and I remain of the view I expressed in *Fischbein* that a mutual fund investment adviser that allegedly made misrepresentations to mutual fund shareholders cannot be liable under section 10(b) to its parent's shareholders who purchased no mutual fund shares.[7]

<u>Section 20(a) Claim Against JCG</u>

Finally, plaintiffs assert that JCG is liable as a control person under section 20(a) of the

---

[6] *Muzinich*, *Zelman*, and *WorldCom* would all tend to support the proposition established by *Carter-Wallace* that if (contrary to what I have found) JCG made misrepresentations to mutual fund shareholders, the fact that the misrepresentations were not specifically targeted at JCG shareholders would not necessarily insulate JCG from liability to its shareholders in a section 10(b) action. However, as I have earlier indicated, I need not address the *Carter-Wallace* doctrine here. *See supra* note 4.

[7] Plaintiffs seek to distinguish my opinion in *Fischbein* on the additional grounds that (1) JCM, unlike the parent's operating subsidiary in Putnam, accounts for almost all of JCG's revenues, and (2) JCM's officers are also officers of JCG. Neither of these facts is material to the dispositive legal issue that JCM owed no duty to JCG shareholders under the circumstances of this case.

Exchange Act for JCM's violations of section 10(b) and Rule 10b-5.  (SAC ¶¶ 136-40.)  Absent

a primary violation of section 10(b), however, a control person claim fails.  *See Frederic Ian*

*Fischbein PC*, 2006 WL 734483, at *3.  In light of plaintiffs' failure to plead a section 10(b)

claim against JCM, the section 20(a) claim against JCG must be dismissed as well.

A separate order effecting the rulings made in this opinion is being entered herewith.

Date: May 21, 2007             /s/               
                     J. Frederick Motz
                     United States District Judge